UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

                                                    :
YURY A. LINETSKY,                                   :          CASE NO. 1:16-CV-52
                                                    :
        Plaintiff,                                  :
                                                    :
vs.                                                 :          OPINION & ORDER
                                                    :          [Resolving  Docs. 44, 45 & 58]
CITY OF SOLON, et al.,                              :
                                                    :
        Defendants.                                 :
                                                    :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Plaintiff Yury Linetsky here sues his ex-wife, his daughter, law enforcement officers and

the City of Solon after he was arrested but never convicted of fondling  his daughter.  Against a

backdrop where his intellectually limited  and psychologically  impaired daughter became fodder

in his divorce, Linetsky says police did not have probable cause to arrest and charge him.

        As against Defendant-Officers Michael Gantt and Keith Kulak, Plaintiff Linetsky alleges

claims for unlawful arrest, failure to investigate, and malicious  prosecution.[1]  As against

Defendant Detective Kristi Harvey, Linetsky alleges a claim for malicious  prosecution.[2]  As

against Defendant City of Solon,  Linetsky alleges claims for failure to train or supervise and

supervisor liability.[3]  And as against Defendants Bayan Linetsky-Gliner  and Marina Gliner,

Linetsky alleges state law claims for malicious  prosecution, civil conspiracy, defamation,

intentional  infliction  of emotional  distress, and false light  invasion  of privacy.[4]

        Defendants move for summary judgment on all claims. For the following  reasons, the

Court **GRANTS** Defendants City of Solon,  Gantt, Kulak, and Harvey's motion  for summary

---

[1] Doc. 1, at 41-46.
[2] *Id*. at 44-46.
[3] *Id*. at 46-48.
[4] *Id*. at 48-54.

Case No. 1:16-CV-52
Gwin, J.

judgment as to all § 1983 claims, and **GRANTS IN PART** and **DENIES IN PART** Defendants

Linetsky-Gliner and Gliner's motions for summary judgment.

# I. Background

Before state authorities, Plaintiff's child, Defendant Bayan Linetsky-Gliner, alleged that

Plaintiff Yury Linetsky sexually abused her. Bayan Linetsky-Gliner is the adopted daughter of

Plaintiff Yury Linetsky. Bayan Linetsky-Gliner's allegations resulted in Ohio charging and

prosecuting Linetsky with two counts of gross sexual imposition and two counts of kidnapping

with a sexual motivation. After these state court criminal charges were dropped, Plaintiff Yury

Linetsky sues persons involved with the charges and investigation.

*The Linetsky-Gliner Family History*

Plaintiff Yury Linetsky married Defendant Marina Gliner in 1992. Ten years later, they

adopted Bayan Linetsky-Gliner from an orphanage in Kazakhstan.[5] At the time of the adoption

and after, Bayan Linetsky-Gliner was intellectually limited and suffered psychological problems.

When she was adopted, Bayan Linetsky-Gliner could only speak a few words, and did not know

the alphabet or numbers in any language.[6] She was later diagnosed with attention deficit and

hyperactivity disorder (ADHD), generalized anxiety disorder, and mild intellectual disability.[7] In

tenth grade, Bayan Linetsky-Gliner was testing at a sixth grade equivalent and earned a full-

scale IQ of 75.[8]

The marriage failed. In March 2006, Gliner filed for divorce and two years of

contentious divorce proceedings followed.[9]

---

[5] Doc. 43-1 at 48.
[6] *Id.* at 50-51; Doc. 56-1 at 61.
[7] Doc. 43-1 at 75-80.
[8] *Id.* at 76-78. In 2010, Linetsky-Gliner earned a Wechsler Intelligence Scale-IV full-scale IQ of 60, which is classified as "extremely low." Her full-scale IQ placed her in the 0.4th percentile. Doc. 56-1 at 87.
[9] Doc. 56-1 at 52.

Case No. 1:16-CV-52
Gwin, J.

Gliner sought and obtained custody of their daughter. Although Gliner was given custody, Plaintiff Linetsky received visitation rights on alternating weekends.[10] Child custody proceedings continued through 2013, when Linetsky-Gliner, then an 18-year-old junior at Solon High School, moved out of her mother's house to live with her father.[11]

*Initial Allegations of Sexual Abuse*

Plaintiff Yury Linetsky alleges that Defendant Solon Police Officers Michael Gantt and Keith Kulak, as well as Solon Police Detective Kristi Harvey, recommended Linetsky's arrest and prosecution.[12] Plaintiff Linetsky alleges Gantt and Kulak unconstitutionally caused his arrest without probable cause.[13] Gantt and Kulak respond that probable cause existed for their arrest recommendation; that a magistrate with knowledge of all relevant information authorized the arrest; and they are qualifiedly immune in any case.[14]

Over several days in January 2014, Plaintiff's child, Linetsky-Gliner, told a high school assistant principal and other Solon High School counselors that her father had drunkenly fondled her during the Christmas 2013 winter break.[15] She said Plaintiff Yury Linetsky had put his hands under her sleepwear before drunkenly falling asleep.[16] Solon Police Officers Michael Gantt and Keith Kulak investigated the allegations and took a statement from Linetsky-Gliner that was similar to the statement that Linetsky-Gliner had given school officials, although with minor differences.[17]

---

[10] Doc. 43-1 at 58.
[11] Doc. 56-1 at 84.
[12] Doc. 1. at 41-46.
[13] Doc. 80 at 14-15.
[14] Doc. 58 at 19-24.
[15] Doc. 50-1 at 1 (Ex. 15).
[16] *Id.*
[17] Doc. 42-1 at 27-29, 139.

Case No. 1:16-CV-52
Gwin, J.

Defendant Linetsky-Gliner also told Officer Gantt that her father had inappropriately touched her in the past, but said that this was the first time he had touched her under her clothes.[18] Officer Gantt did not ask school officials whether Linetsky-Gliner had mental health problems or learning disabilities.[19]

Officer Gantt reported that probable cause existed to arrest Plaintiff Yury Linetsky.[20] Defendant Officer Kulak and supervisor, Sergeant McGee, agreed. Supervising Sergeant McGee directed Gantt to arrest him.[21] A deputy clerk of court signed the arrest warrant. The deputy was also a Solon Police Department dispatcher.[22]

As this was unfolding, Defendant Gliner came to the Solon Police Department and gave a written statement about a "very precise" 2003 observation.[23] In her statement, Gliner wrote that approximately six months after Bayan Linetsky-Gliner's adoption, she walked into her daughter's room and witnessed Linetsky sitting on the bed looking between the girl's legs, which were up in the air and unclothed.[24]

*Linetsky's Arrest & Indictment*

On January 10, 2014, Solon police officers arrested Plaintiff Yury Linetsky and brought him to the Solon Police Department.[25] Two days later, Linetsky was released on bond.[26]

In May 2014, Officer Gantt gave grand jury testimony about the alleged sexual assault.[27] On May 21, 2014, the grand jury indicted Linetsky on four counts: two counts for the 2003

---

[18] *Id.* at 139.
[19] *Id.* at 40-42.
[20] *Id.* at 33.
[21] *Id.* at 43, 46.
[22] *Id.* at 84.
[23] Doc. 56-1 at 225-27.
[24] *Id.*
[25] Doc. 43-1 at 126-27, 261.
[26] *Id.* at 261.
[27] Doc. 42-1 at 100.

Case No. 1:16-CV-52
Gwin, J.

Kidnapping  and Gross Sexual Imposition  events, and two counts for the December 2013

Kidnapping  and Gross Sexual Imposition  events.[28]

*More Allegations*

After Plaintiff Linetsky's May 2014 indictment,  Linetsky-Gliner  made additional

allegations  against her father. In October 2014, she told Solon  Police  Detective Harvey that her

father abused her before the winter break incident,  including  incidents of vaginal penetration.[29]

She upped the ante in January 2015, telling  Detective Harvey that her father had raped her that

month.[30]

Later in January 2015, Linetsky-Gliner  came up with even more allegations.  She told

Detective Harvey that her father had begun  digitally  penetrating her in the fourth grade, and had

sexual intercourse with her since the sixth grade.[31] Michael Stacko, Linetsky-Gliner's  friend,

similarly  reported to Detective Harvey that Linetsky-Gliner  had told him her father had raped her

thirty to forty times since seventh grade.[32]

Defendant former wife Gliner also contributed  additional  post-indictment  allegations

against Linetsky. In a February 24, 2015 email to Detective Harvey, Gliner  stated that Linetsky

began "molesting"  their daughter two or three years after she filed for divorce.[33]

---

[28] Doc. 55-1 at 32 (Ex. 57).
[29] *Id.* at 41, 44, 50.
[30] Doc. 55-2 at 14 (Ex. 63).
[31] *Id.* at 138-44 (Ex. 70).
[32] *Id.* at 23-24 (Ex. 67). In February 2015, Linetsky-Gliner gave even more allegations. She told Solon Police Officer James Fiktus that her father had propositioned her for sex and raped her, but she quickly recanted her allegation while filling out a written statement. Doc. 55-1 at 161-64; Doc. 55-2 at 36-37 (Ex. 74). In March 2015, Linetsky-Gliner told Detective Harvey that her father made her watch pornography on her iPad. Doc. 55-2 at 40 (Ex. 75).
[33] Doc. 56-2 at 178 (Ex. 117).

Case No. 1:16-CV-52
Gwin, J.

*Recantations*

Several months after these new January 2015 allegations and in March 2015, Linetsky-Gliner told Cuyahoga County Prosecuting Attorney Ronni Ducoff that she wanted to "take everything back."[34] Linetsky-Gliner gave a written statement that her father had not raped her on January 8, 2015. After Linetsky-Gliner's recantation, the police closed the investigation for the January 2015 rape.[35] On April 1, 2015, Linetsky-Gliner sent Detective Harvey an email stating that she wished to recant all of her allegations, including those from January 2014.[36] The prosecution dismissed all charges without prejudice on June 15, 2015.[37]

In deposition testimony, Linetsky-Gliner claims that her mother had encouraged her to make false allegations of sexual abuse. Linetsky-Gliner testified that her mother "forced [her] to write a police report and that it was all [her mother Gliner's] fault that [she] had to go through this."[38] Gliner "would tell [her daughter] to go to the police department, talk to Detective Harvey, or she would call the police."[39] In a September 17, 2014 text message to her mother, Linetsky-Gliner wrote, "U forced me to file a police report when I didn't have to."[40]

Likewise, after her mother had Linetsky-Gliner jailed for a week in April 2015, Linetsky-Gliner withdrew her recantation because she believed that her mother would not bail her out unless she supported the allegation that her father had sexually molested her.[41] After Linetsky-Gliner was released from jail, her mother drafted contract rules that Linetsky-Gliner needed to

---

[34] Doc. 55-1 at 172-74; Doc. 55-2 at 40 (Ex. 75).
[35] Doc. 55-2 at 43 (Ex. 76).
[36] Doc. 55-1 at 188-89; Doc. 55-2 at 48 (Ex. 81). The relevant portion of the email says, "From the start of this to [sic] investigation, nothing has happened with my dad. Even the stuff that I reported in jan [sic] 10th 2014 when he got arrested. Nothing happend [sic]!"
[37] Doc. 76-1 at 70.
[38] Doc. 57-1 at 61.
[39] *Id.* at 62.
[40] Doc. 56-2 at 150 (Ex. 109).
[41] Doc. 57-1 at 216.

-6-

Case No. 1:16-CV-52
Gwin, J.

follow to live in Gliner's home, to receive her $25 weekly allowance, to have access to a phone and car, and to host a graduation party.[42] Under Rule 3, titled "Respect for Family," the contract states "you want to win."[43] Linetsky-Gliner testified that this referred to the sexual abuse case against her father, and that living with her mother was conditioned on her desire to win that case.[44]

*Procedural History*

On January 9, 2016, Plaintiff Linetsky filed a Complaint against Defendants Gantt, Kulak, Harvey, City of Solon, Linetsky-Gliner, and Gliner.[45] Plaintiff claims various federal constitutional claims against Officers Gantt, Kulak, Detective Harvey and the City of Solon for unlawful arrest, failure to investigate, malicious prosecution, and failure to train or supervise. He also alleges state law claims against Linetsky-Gliner and Gliner for civil conspiracy, malicious prosecution, defamation, intentional infliction of emotional distress, and false light invasion of privacy.[46]

All Defendants move for summary judgment on all claims.[47]

## II. Legal Standard

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[48] The moving party must first demonstrate that there is an absence of a genuine dispute as to a material fact entitling it to judgment.[49]  Once the moving party has done so, the non-moving

---

[42] *Id.* at 101, 217.
[43] Doc. 56-2 at 190 (Ex. 123).
[44] Doc. 57-1 at 102.
[45] Doc. 1.
[46] *Id.* at 41-54.
[47] Docs. 44, 45, 58.
[48] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[49] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Case No. 1:16-CV-52
Gwin, J.

party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[50]  The existence of some doubt as to the material facts is insufficient to defeat a motion for summary judgment.[51]  The Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[52]

### III. Discussion

#### A. Unlawful Arrest

Plaintiff Linetsky claims that Defendants Police Officer Gantt and Kulak violated Linetsky's constitutional right to avoid arrest unless the arrest is supported by probable cause. Linetsky says Gantt and Kulak violated his rights when they arrested him for gross sexual imposition based on his daughter's "uncorroborated allegations."[53]  Defendants Gantt and Kulak counter that they had probable cause to arrest Plaintiff and this probable cause defeats Linetsky's unlawful arrest claim.

##### 1. Probable Cause

"A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff."[54]  To determine whether an arrest was supported by probable cause, the Court must decide "whether, at the time of the arrest, the facts and circumstances within [the arresting officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person to conclude that an

---

[50] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[51] *Id.* at 586.
[52] *Killion*, 761 F.3d at 580. (internal citation omitted).
[53] Doc. 80 at 14.
[54] *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (quoting *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)).

Case No. 1:16-CV-52
Gwin, J.

individual either had committed or was committing an offense."[55] The fact that a suspect is later

acquitted of the offense for which he was arrested is "irrelevant" to the arrest's validity.[56]

Plaintiff was arrested for gross sexual imposition in violation of O.R.C. § 2907.05. Under

O.R.C. § 2907.05,

> (A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies:
>
> > (1) The offender purposely compels the other person, or one of the other persons, to submit by force or threat of force.[57]

Accordingly, to have probable cause to arrest Plaintiff Linetsky, it must have been reasonable for

Officers Gantt and Kulak to conclude that Plaintiff had sexual contact with Linetsky-Gliner by

force or threat of force.

In the context of sexual assault, a victim's accusation, "especially when bolstered by . . .

records which confirm that there was a window of time within which the alleged sexual assault

could have occurred," is "sufficient to establish probable cause."[58] "[E]yewitness identification

will constitute sufficient probable cause unless, at the time of the arrest, there is an apparent

reason for the officer to believe that the eyewitness was lying, did not accurately describe what

[she] had seen, or was in some fashion mistaken regarding [her] recollection of the

confrontation."[59]

At the time of Plaintiff Linetsky's arrest, Officers Gantt and Kulak had received alleged

victim Linetsky-Gliner's statement that Linetsky had drunkenly fondled her vaginal area.

---

[55] *United States v. Torres–Ramos*, 536 F.3d 542, 555 (6th Cir. 2008) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, (1964)).
[56] *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979).
[57] Ohio R.C. § 2907.05.
[58] *Ahlers v. Schebil*, 188 F.3d 365, 370-71 (6th Cir. 1999).
[59] *Id.* at 370 (6th Cir. 1999) (internal quotations omitted); *see also United States v. Harness*, 453 F.3d 752, 754 (6th Cir. 2006).

Case No. 1:16-CV-52
Gwin, J.

Linetsky-Gliner had given similar, even if not completely similar descriptions to a Solon assistant principal and to a counselor. Based on the facts and circumstances known to Officers Gantt and Kulak at the time of Linetsky's arrest, they had probable cause to believe that Plaintiff Yury Linetsky had committed crime of gross sexual imposition. With no personal knowledge and with no obvious independent witnesses, Gantt and Kulak could accept Linetsky-Gliner's description.

On January 10, 2015, Bayan Linetsky-Gliner told Officers Gantt and Kulak and two school officials that Linetsky had sexually assaulted her over winter break.[60] Later that morning, Linetsky-Gliner dictated a written statement to Solon High School employee Trish Kruse that restated her sexual assault allegations.[61] At around 4:00 p.m., the girl's mother, Marina Gliner, reported to Officer Gantt that when Linetsky-Gliner was seven years old, Gliner had discovered Linetsky's peering between the girl's unclothed legs and possibly touching her.[62] Plaintiff was arrested sometime after 4:30 p.m. on January 10, 2015.[63]

Given this information, Officers Gantt and Kulak had probable cause to arrest Linetsky. The officers had eyewitness testimony from the alleged victim, Linetsky-Gliner, and corroborative evidence from the alleged victim's mother regarding a prior incident.

---

[60] Doc. 42-1 at 139 ("Bayan stated that while staying at her father's home, Yury Linetsky, she was sexually assaulted by him. Bayan stated that while she was laying on her bed, her father stumbled into her room extremely intoxicated. Bayan stated that her father then laid in her bed beside her. He then placed his hand into her pants where he touched her vagina. Bayan stated that she then grabbed his wrist and pulled his hand from her pants while yelling "stop!" She stated that after she removed his hand from her pants, Yury fell asleep behind her. Bayan then tried to get out of the bed but was unable to because Yury's dead weight prevented her from moving. Bayan stated that after struggling, she was finally able to get from underneath Yury at which time she left the bedroom and went to another room where she fell asleep. Bayan stated that when Yury touched her vagina, he did not penetrate her.").

[61] Doc. 42-1 at 143 ("I layed [sic] in bed and then he [Yury] came to my room and layed [sic] next to me. And then his hands started going down my pants. I tried to get up and leave, he restrained me from leaving. He was already drunk when I got home. I told him to 'stop' and he would not. I told him again he stopped and that is when I left my room.").

[62] Doc. 56-2 at 195 ("My daughter was adopted in Dec. 2002 at the age of 7 years old. About 6 m's [months] later, I walked into my daughter's room, she was on the bed, on her back. Without underpants w/ her legs spread out. My husband was sitting on the bed looking between her legs on her private parts. I think he pulled his hands quickly when I walked in.").

[63] Doc. 43-1 at 126-27.

Case No. 1:16-CV-52
Gwin, J.

Plaintiff argues that probable cause was lacking because (1) Linetsky-Gliner was an uncorroborated child witness and (2) there were inconsistencies between Linetsky-Gliner's January 10 verbal and written statements.[64] These arguments fail.

Although basing probable cause for a sexual crime entirely on a child-witness's allegations is sometimes problematic,[65] Linetsky-Gliner's allegations were sufficiently credible.

In *Wesley v. Campbell*, the Sixth Circuit held that a seven year-old child's sexual assault allegations were not sufficient to support a probable cause determination.[66] In *Wesley*, the child had accused a school counselor of repeatedly sodomizing him in an open office within a "direct line of sight" to multiple staff members.[67] The Sixth Circuit emphasized that these allegations were inherently implausible.[68]

In contrast, Linetsky-Gliner was an eighteen year-old making allegations that were not inherently implausible: her intoxicated father sexually fondled her in her room while she was home alone with him over winter break and while he was drunk.

Additionally, the Linetsky-Gliner verbal and written statements inconsistencies are minor deviations. For example, in her verbal statement, Linetsky-Gliner claimed that Plaintiff put one hand down her pants, whereas in her written statement, she claimed that he used both hands.[69] These inconsistencies do not eliminate probable cause because the overall allegation remained the same: during winter break, Linetsky entered Linetsky-Gliner's bedroom, laid on her bed, and placed his hands in her pants against her will. Probable cause existed, and Linetsky's unlawful arrest claim loses.

---

[64] Doc. 80 at 14-15.
[65] *See Wesley v. Campbell*, 779 F.3d 421, 430 (6th Cir. 2015).
[66] *Id.*
[67] *Id.* at 431.
[68] *Id.*
[69] *Compare* Doc. 42-1 at 139 *with* Doc. 42-1 at 143.

Case No. 1:16-CV-52
Gwin, J.

### 2. Qualified Immunity

Linetsky's false arrest claim also fails because qualified immunity shields Officers Gantt and Kulak from liability for false arrest.

Under the doctrine of qualified immunity, police officers "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or Constitutional rights of which a reasonable person would have known."[70] Qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."[71]

To determine whether qualified immunity applies, the Court analyzes: "(1) whether the allegations give rise to a Constitutional violation; and (2) whether the right was clearly established at the time of the incident."[72] To be "clearly established," the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[73] The Court must also consider "whether the official's action was objectively unreasonable under the circumstances."[74]

Officers Gantt and Kulak acted in an objectively reasonable way when they arrested Linetsky for gross sexual imposition based on Linetsky-Gliner's statements. In doing so, they did not violate clearly established law or Linetsky's Constitutional rights.[75] Given the facts, qualified immunity precludes finding Gantt and Kulak liable for false arrest.

Therefore, this Court **GRANTS** Defendants Gantt and Kulak's motion for summary judgment on Linetsky's claim for unlawful arrest.

---

[70] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[71] *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (internal quotation marks and citation omitted).

[72] *Coley v. Lucas Cnty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (quoting *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013)).

[73] *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

[74] *Harris v. Bornhorst*, 513 F.3d 503, 511 (6th Cir. 2008).

[75] An arrest supported by probable cause does not violate clearly established law or the Constitution.

Case No. 1:16-CV-52
Gwin, J.

### B. Failure to Investigate

Plaintiff Linetsky argues that because Linetsky-Gliner has a "low IQ and [a] propensity to lie," Officers Gantt and Kulak should have further investigated her allegations before arresting Linetsky.

Like many child sexual abuse allegations, little corroborating evidence supported or dispelled Linetsky-Gliner's original allegations. Although Linetsky-Gliner's psychological background might suggest caution, Gantt and Kulak received a largely consistent allegation that Plaintiff Yury Linetsky drunkenly fondled Linetsky-Gliner. Sufficient probable cause existed.

"[O]nce a police officer has sufficient probable cause to arrest, he need not investigate further."[76] Because probable cause existed for Plaintiff Linetsky's arrest, Gantt and Kulak were under no duty to investigate further or look for exculpatory evidence.

This Court **GRANTS** Defendants Gantt and Kulak's motion for summary judgment on Linetsky's claim for failure to investigate.

### C. Malicious Prosecution

Plaintiff Linetsky claims that Defendants Gantt, Kulak, and Harvey actively participated in the decision to prosecute him, knowing that there was no probable cause to believe he committed the alleged offenses.[77] Defendants counter that (1) there was probable cause to prosecute; (2) they did not make, influence, or participate in the decision to prosecute; and (3) they are entitled to qualified immunity.[78]

---

[76] *Klein v. Long*, 275 F.3d 544, 551 (6th Cir. 2001).
[77] Doc. 1 at 44-45.
[78] Doc. 58 at 25-26.

-13-

Case No. 1:16-CV-52
Gwin, J.

To succeed on a § 1983 claim for malicious prosecution, Linetsky must prove the following: (1) that a criminal prosecution was initiated against him and that Gantt, Kulak, and Harvey made, influenced, or participated in the decision to prosecute; (2) that there was a lack of probable cause for the criminal prosecution; (3) that as a consequence of the proceeding, Linetsky suffered a deprivation of liberty apart from the initial seizure; and (4) that the criminal proceeding was resolved in Linetsky's favor.[79] Neither a lack of malice, nor the intervention of a prosecutor, works to absolve an individual officer of liability.[80]

Plaintiff Linetsky attempts to satisfy the § 1983 malicious prosecution test's first factor by pointing to Gantt, Kulak and Harvey's involvement in grand jury proceedings.[81] But police officers have absolute immunity for the testimony they give as grand jury witnesses, even if the officer commits perjury.[82] Linetsky provides no argument, other than the grand jury testimony, that these Defendants made or participated in the decision to prosecute him. His § 1983 malicious prosecution claim thus fails.

Linetsky also fails to establish that there was a lack of probable cause for the criminal prosecution. As discussed above, Gantt, Kulak, and Harvey had probable cause to arrest Linetsky for the gross sexual imposition charge. The grand jury indictment bolsters this finding of probable cause.[83] Linetsky fails to satisfy the first or second factor for a § 1983 malicious prosecution claim.

---

[79] *Sykes v. Anderson*, 625 F.3d 294, 308-09 (6th Cir. 2010).
[80] *Id.* at 309.
[81] Doc. 80 at 15.
[82] *Rehberg v. Paulk*, 132 S.Ct. 1497, 1506 (2012) ("[A] grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony.").
[83] *See Kaley v. United States*, 134 S.Ct. 1090, 1097 (2014) ("[A]n indictment, fair upon its face, and returned by a properly constituted grand jury . . . conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged.") (internal quotations omitted).

-14-

Case No. 1:16-CV-52
Gwin, J.

Accordingly, this Court **GRANTS** Defendants Gantt, Kulak, and Harvey's motion for summary judgment on Linetsky's claim for malicious prosecution.

### D. Failure to Train or Supervise

Plaintiff Linetsky argues that the City of Solon inadequately trained and supervised its police officers for sexual assault investigations.[84] Linetsky also alleges a constitutional violation based on the City of Solon policy and custom "of permitting its officers and police dispatchers to serve as deputy clerk of courts and sign off on arrests [sic] warrants prepared by other officers."[85] Defendant City of Solon counters that Linetsky did not sustain a constitutional violation, and that there is no evidence of a policy, practice or custom that would cause a constitutional violation.[86]

To succeed on a § 1983 claim against a municipality, a plaintiff must prove that the violation of a federal right occurred as the result of an illegal policy or custom.[87] A municipality may not be held liable under § 1983 simply upon the theory of *respondeat superior*.[88] Instead, the governmental policy or custom, even a policy of inaction, must have been the moving force causing the alleged violation.[89]

As discussed, Plaintiff Linetsky does not show an arrest without probable cause. Without such a constitutional violation, Linetsky cannot logically complain that some failure of training contributed to an arrest that was supported by probable cause.

---

[84] Doc. 1 at 47.
[85] Doc. 80 at 16.
[86] Doc. 84 at 12-13.
[87] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)
[88] *Bennett v. City of Eastpointe*, 410 F.3d 810, 818 (6th Cir. 2005).
[89] *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403–04 (1997); *Monell*, 436 U.S. at 694 ("It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Case No. 1:16-CV-52
Gwin, J.

Nor does Solon's policy of allowing law enforcement officers to serve as deputy clerks and sign arrest warrants sustain a *Monell* claim. Although Solon's warrant procedure was faulty, Linetsky himself did not suffer an actual violation of his constitutional rights. The City of Solon's customs or policies, standing alone, do not give rise to a § 1983 action.

Solon's deputy clerk policy violated the Fourth Amendment. In his deposition, Officer Gantt stated that Solon police officers, serving as deputy clerks of court, issued arrest warrants.[90] Christina Hull, a Solon Police Department dispatcher, was the deputy clerk who issued Linetsky's arrest warrant.[91] Linetsky argues that law enforcement officers cannot serve dual roles as deputy clerks making probable cause determinations.[92]

This Court agrees. The Supreme Court requires that magistrates issuing arrest warrants are "sever[ed] and disengage[d] from activities of law enforcement."[93] Law enforcement officers—even dispatchers like Hull—are active participants in criminal investigations, hardly the "neutral and detached magistrates" authorized to issue warrants. When a law enforcement officer serves as a deputy clerk and makes a probable cause determination, the arrest warrant issued is invalid.

But while the arrest warrant was invalid, Plaintiff Linetsky's *Monell* claim does not prevail. To find municipal liability, this Court must first find that Linetsky suffered an actual violation of his constitutional rights at the hands of the Defendant officers. Failure to satisfy the

---

[90] Doc 42-1 at 22-23, 56.
[91] *Id.* at 84.
[92] Doc. 80 at 17.
[93] *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972); *see also Johnson v. United States*, 333 U.S. 10, 14 (1948) ("[I]nferences [of probable cause must] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime."); *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971) ("[P]olicemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention."); *State v. Hobbs*, 975 N.E.2d 965, 971 (Ohio 2012) (holding that person acting as deputy sheriff and deputy clerk for municipal court was not neutral and detached magistrate for purpose of determining whether probable cause exists).

Case No. 1:16-CV-52
Gwin, J.

Fourth Amendment's Warrant Clause is only problematic when a seizure "requires a warrant."[94]

Here, Linetsky's arrest did not require a warrant: it was supported by probable cause, and was

therefore constitutional.[95]

This Court **GRANTS** Defendant City of Solon's motion for summary judgment on

Linetsky's *Monell* claim for failure to train or supervise.

### E. Supervisor Liability

Plaintiff Linetsky also brings a claim against Defendant City of Solon for supervisor

liability, arguing that the city encouraged Gantt, Kulak, and Harvey's unconstitutional conduct

through direct participation and knowing acquiescence.[96] Defendant argues that the claim relies

on *respondeat superior* and therefore fails as a matter of law.[97]

"Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*."[98] Moreover, "a prerequisite of supervisory

liability under § 1983 is unconstitutional conduct by a subordinate of the supervisor."[99] Thus,

"[i]f no constitutional violation by the individual defendant is established, the municipal

defendants cannot be held liable under § 1983."[100]

Plaintiff Linetsky's claims of supervisory liability fail as a matter of law because Gantt,

Kulak, and Harvey did not violate Linetsky's constitutional rights. Even if they had violated

---

[94] *Graves v. Mahoning County*, 821 F.3d 772, 776 (6th Cir. 2016).
[95] *See DeFillippo*, 443 U.S. at 36 ("[T]he Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense."). Although arrests in the home generally require a warrant absent exigent circumstances, *see Payton v. New York*, 445 U.S. 573, 589-601 (1980), Linetsky's arrest took place on his driveway, where there is no reasonable expectation of privacy, *see United States v. Thomas*, 430 F.3d 274, 280 (6th Cir. 2005).
[96] Doc. 1 at 47-48.
[97] Doc. 58 at 29.
[98] *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (citing *Monell*, 436 U.S. at 691).
[99] *McQueen v. Beecher Cmty. Schools*, 433 F.3d 460, 470 (6th Cir. 2006).
[100] *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001); *see also S.L. ex rel. K.L. v. Pierce Tp. Bd. of Trustees*, 771 F.3d 956, 963 (6th Cir. 2014).

Case No. 1:16-CV-52
Gwin, J.

Linetsky's constitutional rights, his supervisory liability claim would still lose. Linetsky offers no evidence of the City of Solon participating or knowingly acquiescing in subordinate conduct. Accordingly, this Court **GRANTS** Defendant City of Solon's motion for summary judgment on Linetsky's *Monell* claim for supervisory liability.


### F. Jurisdiction over State-Law Claims

The Court has now granted Defendants Gantt, Kulak, Harvey and City of Solon's motion for summary judgment on Plaintiff's federal law claims. The remaining claims against Defendants Linetsky-Gliner and Gliner are state law claims. Under 28 U.S.C. § 1367(c)(3), a district court "may decline to exercise supplemental jurisdiction over" a state law claim if it has "dismissed all claims over which it has original jurisdiction." Thus, the Court has the power to, at its discretion, dismiss Linetsky's state law claims against Linetsky-Gliner and Gliner, based on its judgment regarding the § 1983 claims over which it had original jurisdiction.

However, "[t]hat power need not be exercised in every case in which it is found to exist."[101] After the dismissal of federal law claims, the "justification" for continuing to exercise jurisdiction over a plaintiff's state law claims "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present[,] a federal court should hesitate to exercise jurisdiction over state claims."[102]

In this case, such considerations weigh in favor of the Court continuing to exercise jurisdiction over Linetsky's state law claims. With trial a few weeks away, considerations of judicial economy counsel against sending Linetsky's claim—and the substantial evidence that

---

[101] United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).
[102] *Id.*

-18-

Case No. 1:16-CV-52
Gwin, J.

the parties have gathered—to an unfamiliar state court at this late state of the litigation.[103]  Given

that discovery is completed, it would be inconvenient to all parties to dismiss Linetsky's state

law claims without resolving them. For these reasons, the Court will exercise its jurisdiction over

Linetsky's state law claims, even in the absence of the federal claims that gave rise to its original

jurisdiction over this action.


### G. Judicial Proceedings Immunity

Linetsky's remaining claims are against his daughter, Bayan Linetsky-Gliner, and his ex-

wife, Marina Gliner. As an initial matter, Defendant Gliner asserts that all claims against her

must fail because the judicial proceedings privilege confers absolute immunity upon her for her

statements to police and prosecutors.[104] Defendant Linetsky-Gliner similarly seeks absolute

immunity from the defamation claim.[105] Although the Defendants are entitled to absolute

immunity for their statements to the Cuyahoga County prosecutors, their statements to law

enforcement are not protected.

Ohio recognizes an absolute privilege from civil liability for statements made "in a

judicial proceeding."[106] The Ohio Supreme Court has held that "[a]n affidavit, statement or other

information provided to a prosecuting attorney, reporting the actual or possible commission of a

crime, is part of a judicial proceeding. The informant is entitled to an absolute privilege against

civil liability for statements made."[107] The privilege seeks to "encourage the reporting of

criminal activity by removing any threat of reprisal in the form of civil liability."[108]  Accordingly,

---

[103] See *Province v. Cleveland Press Publ'g Co.*, 787 F.2d 1047, 1055 (6th Cir. 1986) ( "overwhelming interest" in judicial economy may allow a district court to decide state law claims when federal claim is dismissed before trial).
[104] Doc. 44 at 7.
[105] Doc. 45 at 16-17.
[106] *M.J. DiCorpo, Inc. v. Sweeney*, 634 N.E.2d 203, 209 (Ohio 1994).
[107] *Id.*
[108] *Id.*

Case No. 1:16-CV-52
Gwin, J.

Linetsky-Gliner and Gliner's statements to Cuyahoga County prosecutors receive absolute immunity.

The Ohio Supreme Court has not directly addressed whether statements to law enforcement officers are entitled to absolute immunity. This Court applies the controlling state substantive law,[109] and is bound by the decisions of the state's highest court.[110] Because Ohio's highest court has not addressed what immunity should be given to statements made to law enforcement, this Court must predict how the state's highest court would resolve the matter.[111]

This Court agrees with Judge Watson of the Southern District of Ohio that "the Supreme Court of Ohio would not consider statements made to the police part of a 'judicial proceeding' and therefore would not extend absolute immunity to statements made to the police."[112] Indeed, Ohio appellate courts have not consistently extended absolute immunity to statements made to law enforcement personnel.[113]

Ohio's Eighth Appellate District succinctly explains why statements given to police only merit a qualified privilege: "[W]hen the prosecutor is informed, the judicial proceedings start. In contrast, when the police are informed, only a complaint has been filed and the proceedings have not started . . . initial police work is investigatory and not a judicial proceeding."[114] Accordingly, Defendants Linetsky-Gliner and Gliner's statements to the Solon police department are only subject to a qualified privilege.

---

[109] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[110] *Pennington v. State Farm Mut. Auto. Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009).

[111] *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008).

[112] *Dehlendorf v. City of Gahanna, Ohio*, 786 F. Supp. 2d 1358, 1365 (S.D. Ohio 2011). The Court also recognizes that the majority of state courts only extend qualified immunity to persons making statements to police about alleged crimes. *Id.* at 1364.

[113] *Compare, e.g., Lasater v. Vidahl*, 979 N.E.2d 828, 830 (Ohio Ct. App. 2012) (applying absolute privilege to those who report criminal activity to police officers) *with Scott v. Patterson*, No. 81872, 2003 WL 21469363, at *2 (Ohio App. Ct. June 26, 2003) (holding that statements to police officers are not made in context of judicial proceedings and therefore absolute immunity does not apply).

[114] *Scott*, 2003 WL 21469363, at *2.

-20-

Case No. 1:16-CV-52
Gwin, J.

This Court finds that qualified privilege does not protect Linetsky-Gliner and Gliner's statements to law enforcement. The qualified privilege only protects communications "made in good faith."[115] As discussed below, Plaintiff offers sufficient evidence for a reasonable juror to conclude that the Defendants knowingly lied about the sexual assault allegations. As a result, the Court cannot hold as a matter of law that the Ohio qualified privilege applies to their statements, and proceeds to analyze each individual claim against Linetsky-Gliner and Gliner.

### H. Malicious Prosecution

Plaintiff Linetsky alleges that Defendants Linetsky-Gliner and Gliner are liable for malicious prosecution due to their participation in the investigation that led to Linetsky's indictment for gross sexual imposition.[116] Responding, Linetsky-Gliner and Gliner argue that Linetsky's indictment raises a presumption of probable cause that shields them from his malicious prosecution claim.[117] Because reasonable minds could conclude that Defendants lacked reasonable grounds to believe that Linetsky had engaged in gross sexual imposition, this claim survives summary judgment.

"Ohio law, like the English common law before it, has long recognized a right to recover in tort for the misuse of civil and criminal actions as a means of causing harm."[118] To prevail on a state law malicious criminal prosecution claim, the plaintiff must prove the following elements: "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the accused."[119]

---

[115] *Hahn v. Kotten*, 331 N.E.2d 713, 719 (Ohio 1975).
[116] Doc. 1 at 48-49.
[117] Doc. 82 at 4-5; Doc. 83 at 7-8.
[118] *Trussell v. Gen. Motors Corp.*, 559 N.E.2d 732, 734 (Ohio 1990).
[119] *Criss v. Springfield Tp.*, 564 N.E.2d 440, 443 (Ohio 1990).

Case No. 1:16-CV-52
Gwin, J.

Plaintiff Linetsky must prove all of the elements to sustain a malicious prosecution cause of action. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[120]

### 1. Malice

For the purpose of a malicious criminal prosecution claim, courts define malice as "an improper purpose, or any purpose other than the legitimate interest in bringing an offender to justice."[121] Courts can infer malice from the absence of probable cause.[122]

Reasonable jurors could conclude that both Defendants Linetsky-Gliner and Gliner acted with malice when they instigated the criminal prosecution of Plaintiff Linetsky. In spring 2015, Linetsky-Gliner sent Detective Harvey various emails recanting all allegations against her father. The emails include statements such as, "I lied about the time when my dad had sex with me"[123] and "I have lied about my dad about everything."[124] False sexual assault accusations suggest malice.

Likewise, Linetsky-Gliner testified that her mother, Defendant Gliner, encouraged these false allegations.[125] Linetsky-Gliner stated that she knew Gliner "disliked" the Plaintiff, and would be pleased by the allegations.[126] In particular, Linetsky-Gliner testified to instances of her mother incentivizing the criminal allegations against Plaintiff Linetsky.

When Linetsky-Gliner was jailed for a week on domestic violence charges, Linetsky-Gliner believed that her mother would not bail her out unless she withdrew the allegation

---

[120] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[121] *Criss*, 564 N.E.2d at 443.
[122] *Anderson v. Eyman*, 907 N.E.2d 730, 737 (Ohio Ct. App. 2009).
[123] Doc. 57-2 at 6 (Ex. 129).
[124] Doc. 55-2 at 45 (Ex. 78).
[125] Doc. 57-1 at 82-83, 95-96.
[126] *Id.* at 82-83.

Case No. 1:16-CV-52
Gwin, J.

recantation she had given.[127] After Linetsky-Gliner was released from jail, her mother drafted a handwritten contract establishing rules that Linetsky-Gliner had to follow to continue living in the home, receive her $25 weekly allowance, have access to a phone and car, and host a graduation party.[128] Under Rule 3, titled "Respect for Family," the contract states "you want to win."[129] Linetsky-Gliner testified that this statement referred to the case against her father, and that living with her mother was conditioned on wanting to win that case.[130] Gliner's alleged involvement in the false sexual assault accusations suggests malice.

### 2. Probable Cause

To demonstrate probable cause, defendants must have evidence "sufficient to justify an *honest belief* of the guilt of the accused."[131] Probable cause is a "reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant [Defendants] in the belief that the person accused is guilty of the offense with which he is charged."[132] The defendants' conduct must be "weighed in view of the facts and circumstances that the defendant[s] knew or should have known at the time of the instigation of the criminal proceedings."[133]

A grand jury indictment is generally prima facie evidence of probable cause.[134] The plaintiff, however, can still prove a lack of probable cause with "evidence to the effect that the

---

[127] *Id.* at 216. Defendant Gliner denies that she encouraged her daughter to falsely accuse her father while Linetsky-Gliner was in the Solon jail. Gliner argues that audio recordings of her and Linetsky-Gliner's phone conversations from the Solon jail prove this point. Doc. 88 at 2. In those nine recorded conversations, Gliner and Linetsky-Gliner do not discuss the allegations or recantation. *Id.* at 3. While these recorded conversations support Gliner's argument, additional evidence—text messages, the house-rules contract, and Linetsky-Gliner's deposition testimony—create a genuine issue of material as to whether Gliner encouraged her daughter to make false allegations of sexual abuse.
[128] *Id.* at 101, 217.
[129] Doc. 56-2 at 190 (Ex. 123).
[130] Doc. 57-1 at 102.
[131] *Id.* at 738 (internal quotations omitted).
[132] *Id.* at 737-38 (internal quotations omitted).
[133] *Garza v. Clarion Hotel, Inc.*, 695 N.E.2d 811, 813 (Ohio Ct. App. 1997).
[134] *Deoma v. Shaker Heights*, 68 N.E.2d 72, 77 (Ohio Ct. App. 1990).

Case No. 1:16-CV-52
Gwin, J.

return of the indictment resulted from perjured testimony or that the grand jury proceedings were otherwise significantly irregular."[135]

There are genuine issues of material fact as to whether Linetsky-Gliner and Gliner acted without probable cause.[136] As discussed above, there is sufficient evidence to suggest that both Linetsky-Gliner and Gliner knew that Plaintiff Linetsky was not guilty of gross sexual imposition. Even after Linetsky-Gliner recanted her allegations, Gliner encouraged her daughter to retract that recantation.[137] Separately, Gliner told police that in 2003 she observed Plaintiff with his hands up between his daughter's legs. She apparently never reported this to police or sought to disqualify visitation in the divorce. A reasonable juror could find that Defendants Linetsky-Gliner and Gliner lacked the "reasonable ground of suspicion" to believe Linetsky was guilty.

### 3. Termination of Prosecution

Defendant Linetsky-Gliner argues that Plaintiff cannot prove that his legal proceedings favorably terminated.[138] This argument loses.

"[A]n unconditional, unilateral dismissal of criminal charges or an abandonment of a prosecution by the prosecutor or the complaining witness that results in the discharge of the accused generally constitutes a termination in favor of the accused."[139] The dismissal must

---

[135] *Id.*
[136] This Court's finding above that Officers Gantt and Kulak had probable cause to arrest and prosecute Linetsky does not impact the analysis with respect to Defendants Linetsky-Gliner and Gliner. The probable cause finding discussed above concerned whether Gantt and Kulak should have reasonably suspected Linetsky of gross sexual imposition, given the facts and circumstances known to them. The analysis here concerns whether Defendants Linetsky-Gliner and Gliner's belief in Linetsky's guilt was reasonable given their own facts and circumstances.
[137] Doc. 57-1 at 216.
[138] Doc. 45 at 9-10.
[139] *Ash v. Ash*, 651 N.E.2d 945, 947-48 (Ohio 1995).

Case No. 1:16-CV-52
Gwin, J.

indicate "that the accused is innocent,"[140] meaning that there must be a final determination on the merits of the criminal proceedings.[141]

Plaintiff Linetsky's criminal prosecution was terminated in his favor. The charges were dismissed on June 15, 2015.[142] The dismissal was "without prejudice," meaning that the government could re-file criminal charges against Linetsky. However, Defendants fail to offer any evidence that the dismissal was not a favorable termination on the merits. In her deposition, Cuyahoga County Prosecuting Attorney Ronni Ducoff stated that she was not aware of any intention to refile criminal charges against Linetsky.[143]

This Court **DENIES** Defendants Linetsky-Gliner and Gliner's motions for summary judgment on Linetsky's state-law malicious prosecution claim.


*I. Defamation*

Plaintiff Linetsky alleges that Defendants Linetsky-Gliner and Gliner published defamatory statements by making false allegations to Solon High School officials, Solon law enforcement officials, and the Cuyahoga County Prosecutor's Office.[144] Defendants argue that the false statements are time-barred by Ohio's one-year statute of limitations[145] and, in the alternative, that qualified immunity shields the statements.[146]

Defamation is a false publication that injures a person's reputation.[147] To succeed on a defamation claim, the plaintiff must prove five elements: "(1) falsity; (2) the defendant's

---

[140] *Id.* at 947.
[141] *See Broadnax v. Greene Credit Service*, 694 N.E.2d 167, 172 (Ohio App. Ct. 1997).
[142] Doc. 76-1 at 70.
[143] *Id.* at 70-71.
[144] Doc. 1 at 50-51. As discussed in section III.G, Defendants have absolute immunity for their statements to prosecutors.
[145] Doc. 44 at 10-11; Doc. 45 at 16.
[146] Doc. 45 at 16-17.
[147] *Dale v. Ohio Civ. Service Emp. Assn.*, 567 N.E.2d 253, 258 (Ohio 1991).

Case No. 1:16-CV-52
Gwin, J.

responsibility for publication to a third person; (3) a tendency to harm plaintiff's reputation by lowering the community's perception of the plaintiff or inducing others to refrain from associating with him; (4) fault; and (5) injury."[148] Under Ohio law, a defamation action between private parties must commence within one year of when the cause of action accrued.[149] The defamation statute of limitations begins to run on the date the words are spoken or written, not when the plaintiff became aware of them.[150]

Plaintiff Linetsky filed his Complaint on January 9, 2016.[151] Accordingly, § 2305.11(A) bars any defamation claim for statements made by Gliner or Linetsky-Gliner before January 9, 2015. As a result, Gliner and Linetsky-Gliner's January 2014 statements to law enforcement and Solon High School officials regarding the alleged winter break assault are stopped by the statute of limitations.

Some of Linetsky's defamation claims survive the statute of limitations, however. For example, on January 9, 2015, Defendant Linetsky-Gliner reported to police officers that Linetsky had sexually assaulted her the day before;[152] Linetsky-Gliner later told Detective Harvey that she had fabricated these accusations. Likewise, Defendant Gliner sent an email to Detective Harvey on February 24, 2015 stating that Linetsky started "molesting" their daughter a few years after she filed for divorce.[153]

With respect to statements made on or after January 9, 2015, summary judgment is not appropriate. As discussed in Section III.F, the Court cannot determine as a matter of law whether the qualified privilege applies to the Defendants' statements. Moreover, there are triable issues of

---

[148] *Golem v. Village of Put-In Bay*, 222 F. Supp. 2d 924, 935 (N.D. Ohio 2002).
[149] Ohio R.C. § 2305.11(A).
[150] *Daubenmire v. Sommers*, 805 N.E.2d 571, 585 (Ohio App. Ct. 2004).
[151] Doc. 1.
[152] Doc. 55-2 at 13 (Ex. 63).
[153] Doc. 56-2 at 178 (Ex. 117).

Case No. 1:16-CV-52
Gwin, J.

fact regarding the statements' falsity. For instance, Linetsky-Gliner testified during her deposition that "[m]y dad never sexually molested me,"[154] but Robert Schuppel concludes in his expert report that "it is likely [Linetsky-Gliner] experienced some forms of sexual abuse by her adoptive father."[155] This Court cannot rule as a matter of law that Plaintiff's defamation claims fail.

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motions for summary judgment on Linetsky's defamation claims. Although Plaintiff Linetsky's defamation claims for Defendants' statements written or spoken before January 9, 2015 fail, his claims for statements made on or after January 9, 2015 survive.

### J. False Light Invasion of Privacy

Plaintiff Linetsky alleges that Defendants Linetsky-Gliner and Gliner portrayed him in a false light and invaded his privacy by falsely stating to several people that he sexually assaulted Linetsky-Gliner.[156] Defendant Linetsky-Gliner argues that she never publicized the sexual assault accusations.[157] Defendant Gliner argues that the defamation statute of limitations should bar Plaintiff's false light claim because the false light claim is a "disguised" defamation claim.[158]

"In Ohio, one who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the

---

[154] Doc. 57-1 at 220.
[155] Doc. 63-1 at 9.
[156] Doc. 1 at 53.
[157] Doc. 82 at 7.
[158] Doc. 44 at 10-11.

Case No. 1:16-CV-52
Gwin, J.

publicized matter and the false light in which the other would be placed."[159] "Publicity" here is distinct from "publication" associated with defamation. "'Publicity' . . . means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."[160]

Plaintiff fails to provide evidence that Defendants "publicized" the sexual assault allegations. Defendant Linetsky-Gliner told school employees, her psychologists, law enforcement officers, prosecutors, and a couple friends about her sexual assault allegations. Similarly, Defendant Gliner spoke with school employees, law enforcement, and prosecutors regarding the sexual assault allegations. Such limited disclosure falls short of publicizing the allegations in such a manner and to such an extent to make it "substantially certain" to become public knowledge.[161] Defendants did not "make public" this information by communicating it to the public at large or to a significant number of people.

To argue that the Defendants gave publicity to the sexual assault allegations, Plaintiff points to the state court's publicly accessible online docket, which lists his arrest, criminal charges, and other case information.[162] This argument fails. First, Defendants themselves did not make the information public by placing it on the online docket. Second, Plaintiff still fails to prove that the information is public knowledge or substantially certain to become public knowledge. He cannot point to—nor could this Court find—any newspaper articles, television

---

[159] *Welling v. Weinfeld*, 866 N.E.2d 1051, 1059 (Ohio 2007). Unlike defamation claims, invasion of privacy claims have a four-year statute of limitations. *See T.S. v. The Plain Dealer*, 954 N.E.2d 213, 214 (Ohio Ct. App. 2011). Accordingly, the statute of limitations does not bar Plaintiff Linetsky's false-light claims.
[160] *Welling*, 866 N.E.2d at 1057.
[161] *See Grigorenko v. Pauls*, 297 F. Supp. 2d 446, 448-49 (D. Conn. 2003) (holding that disclosing allegations of professor's plagiarism to nine university officials and three individuals at other institutions did not constitute "publicity"); *Hunter v. The Buckle, Inc.*, 488 F. Supp. 2d 1157, 1180 (D. Kan. 2007) (holding that police officers who handcuffed and "paraded" around two wrongly arrested women in front of twenty people did not publicize false statements because the communication was to a "small group of persons").
[162] Doc. 77 at 15.

-28-

Case No. 1:16-CV-52
Gwin, J.

broadcasts, internet postings, or press releases that suggest the information is or will likely

become public knowledge. The availability of information is not synonymous with its

widespread publication.

The Court **GRANTS** Defendants Linetsky-Gliner and Gliner's motion for summary

judgment on Plaintiff Linetsky's false light invasion of privacy claims.


*K. Intentional Infliction of Emotional Distress*

Defendant Linetsky-Gliner says that Plaintiff Linetsky's claim for intentional infliction of

emotional distress fails because Linetsky has not suffered a severely debilitating injury as a result

of the Defendants' conduct.[163] Defendant Gliner argues that her actions do not amount to

extreme and outrageous conduct.[164]

To recover on an intentional infliction of emotional distress claim, Plaintiff Linetsky

must prove four elements:

> (1) that the actor either intended to cause emotional distress or knew or should
> have known that actions taken would result in serious emotional distress to the
> plaintiff, (2) that the actor's conduct was so extreme and outrageous as to go
> "beyond all possible bounds of decency" and was such that it can be considered as
> "utterly intolerable in a civilized community," (3) that the actor's actions were the
> proximate cause of plaintiff's psychic injury, and (4) that the mental anguish
> suffered by plaintiff is serious and of a nature that "no reasonable man could be
> expected to endure it."[165]

At summary judgment, "a plaintiff in a case for intentional infliction of emotion distress must

present some evidence beyond the plaintiff's own testimony that he or she has experienced

emotional distress due to the defendant's actions."[166] "[A]n action to recover for emotional

---

[163] Doc. 82 at 7.
[164] Doc. 44 at 17-18. Defendant Gliner also argues that her conduct—making statements to law enforcement and school officials—is privileged. As discussed in Section III.G, this argument loses.
[165] *Pyle v. Pyle*, 463 N.E.2d 98, 103 (Ohio 1983)
[166] *Buckman–Peirson v. Brannon*, 822 N.E.2d 830, 840 (Ohio Ct. App. 2004).

Case No. 1:16-CV-52
Gwin, J.

distress may not be premised upon mere embarrassment or hurt feelings, but must be predicated upon a psychic injury that is both severe and debilitating."[167]

Viewing the pleadings and evidentiary material in a light most favorable to Linetsky, the Court finds that Linetsky meets his burden. The record contains some evidence to suggest that he suffered from serious emotional distress. Following a series of psychotherapy sessions with Linetsky, Dr. Nora Corcoran, a clinical psychologist, concluded that Linetsky suffers from post-traumatic stress disorder as a result of the sexual assault allegations made by his ex-wife and daughter.[168] Corcoran found that the accusations "made daily functioning difficult and have significantly altered his lifestyle."[169] As signs of his acute trauma, Corcoran points to Linetsky's "extreme insomnia, anxiety, and hyper-vigilance," as well as his "memory problems and cognitive dullness."[170] This is enough for a reasonable juror to find that Linetsky suffered from serious emotional distress.

A reasonable jury could also find that Defendants Linetsky-Gliner and Gliner's conduct was outrageous and extreme. In her deposition, Linetsky-Gliner testified that she and Gliner were both behind the false allegations, and that Gliner had encouraged her to make them.[171] Likewise, a September 17, 2014 text message from Linetsky-Gliner to Gliner states, "U forced me to file a police report when I didn't have to."[172] A reasonable juror could find such behavior—falsely accusing one's father (or the father of one's child) of sexual assault on numerous occasions—constituted egregious conduct "beyond all possible bounds of decency" and "intolerable in a civilized community."[173]

---

[167] *Uebelacker v. Cincom Systems, Inc.*, 549 N.E.2d 1210, 1220 (Ohio Ct. App. 1988).
[168] Doc. 68.
[169] *Id.* at 5.
[170] *Id.* at 4.
[171] Doc. 57-1 at 133-34.
[172] Doc. 56-2 at 150 (Ex. 109).
[173] *See Kovac v. Sup. Dairy*, 930 F. Supp. 2d 857, 870 (N.D. Ohio 2013).

Case No. 1:16-CV-52
Gwin, J.

Therefore, Plaintiff Linetsky has sufficient evidence to survive summary judgment on his intentional infliction of emotional distress claim.

### L. Civil Conspiracy

Plaintiff Linetsky alleges that Defendants Linetsky-Gliner and Gliner engaged in a civil conspiracy to have him charged and prosecuted on false sexual assault allegations.[174]  Defendants say that Linetsky's civil conspiracy claim fails because he lacks evidence of an underlying unlawful act.[175]

In Ohio, to bring a civil conspiracy claim, a plaintiff must show (1) a malicious combination (2) of two or more persons (3) causing injury to person or property and (4) the existence of an unlawful act which is independent from the conspiracy itself.[176] "An underlying unlawful act is required before a civil conspiracy claim can succeed."[177]

Plaintiff Linetsky has produced sufficient evidence that Defendants Linetsky-Gliner and Gliner entered into an agreement and participated in the underlying malicious prosecution, defamation, and intentional infliction of emotional distress. Linetsky-Gliner's deposition testimony, text messages, and house-rules contract with Gliner, for example, provide enough evidence for a reasonable juror to conclude that a civil conspiracy existed. A jury therefore must weigh the evidence and determine the extent to which, if at all, Defendants purposefully engaged in a common scheme to falsely accuse Linetsky of sexual assault.

Accordingly, Plaintiff Linetsky's civil conspiracy claim survives summary judgment.

---

[174] Doc. 1 at 50.
[175] Doc. 44 at 18-19; Doc. 45 at 18-19.
[176] *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442, 446 (6th Cir. 2012) (quoting *Universal Coach, Inc. v. New York City Transit Auth.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993)).
[177] *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998) (citing *Gosden v. Louis*, 687 N.E.2d 481, 496 (Ohio Ct. App. 1996)).

Case No. 1:16-CV-52
Gwin, J.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants Gantt, Kulak, Harvey, and

City of Solon's motion for summary judgment, and **GRANTS IN PART** and **DENIES IN**

**PART** Defendants Linetsky-Gliner and Gliner's motions for summary judgment.


IT IS SO ORDERED.


Dated: November 23, 2016                          _s/_      _James S. Gwin_
                                                  JAMES S. GWIN
                                                  UNITED STATES DISTRICT JUDGE